UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SPCP GROUP, LLC,

    Appellant,

v.                                                                                                  Lead Case No.  8:10-cv-2381-T-24

JAMES JOHN BIGGINS,

    Appellee.
_____/

SPCP GROUP, LLC,

    Appellant,

v.                                                                                                  Case No.  8:10-cv-2384-T-24

KRISTIN R. BIGGINS,

    Appellee.
_____/

SPCP GROUP, LLC,

    Appellant,

v.                                                                                                  Case No.  8:10-cv-2386-T-24

KIMBERLY RAE NORTON a/k/a
Kimberly Rae Biggins,

    Appellee.
_____/

SPCP GROUP, LLC,

      Appellant,

v.                                                                                             Case No. 8:11-cv-33-T-24

MICHAEL BIGGINS and
ELIZABETH BIGGINS,

      Appellees.
_____/

SPCP GROUP, LLC,

      Appellant,

v.                                                                                              Case No. 8:11-cv-34-T-24

JAMES E. BIGGINS and
SHIRLEY R. BIGGINS,

      Appellees.
_____/

# **ORDER**

This cause comes before the Court on a consolidated appeal from orders of the Middle District of Florida Bankruptcy Court, in which the Bankruptcy Court confirmed the Plans of Reorganization of individual Debtors/Appellees James John Biggins, Kristin R. Biggins, Kimberly Rae Norton, Michael Biggins, Elizabeth Biggins, James E. Biggins, and Shirley R. Biggins (collectively, "Debtors," "Appellees," or "the Biggins"). SPCP Group, LLC ("SPCP"), which is Debtors' largest unsecured creditor, appealed the confirmation of Debtors' reorganization plans.

**I.**      **Background**

The undisputed procedural and factual history of this case is summarized as follows:

Cypress Creek Assisted Living Residence, Inc. ("the Residence"), is a company that

owns an assisted living facility located in Sun City, Florida. Debtors/Appellees James John Biggins, Kristin R. Biggins, Kimberly Rae Norton, and Michael Biggins are the shareholders of the Residence, and they each own a 25 percent interest in the company. Cypress Creek Assisted Living Residence Management, LLC ("the Management company"), is the management company that manages and operates the assisted living facility.

In 2007, the Residence borrowed approximately $5,000,000.00 from American Bank for operation of the assisted living facility. In connection with the loan, the Residence executed a note in favor of American Bank, which was secured by a mortgage on the property of the assisted living facility. Debtors/Appellees and the Management company executed and delivered to American Bank personal guaranties in which each individually, absolutely, and unconditionally guaranteed the obligations and liabilities of the Residence under the note.

Through a series of transactions, American Bank assigned all of its rights, title, and interests in the note, the mortgage, and the guaranties to Appellant SPCP. In May of 2008, the note matured and became immediately due to SPCP. The Residence defaulted on the loan by failing to make the payment due when the note matured.

As a result of the default, in September of 2008, SPCP filed a civil action in state court to foreclose on the property subject to the mortgage, and for damages for breach of the note and breach of the personal guaranties. That lawsuit precipitated the Residence and the Management company filing Chapter 11 petitions for bankruptcy. The bankruptcy court later confirmed their Chapter 11 Plans of Reorganization. Those plans require the Residence and the Management company to re-pay SPCP 100 percent of the debt owed to SPCP, plus interest at a rate of 5.25 percent, in monthly payments of approximately $36,000.00. The plans further provide that the

balance owed, together with any accrued interest, will balloon and be fully due and payable to SPCP 72 months after confirmation.[1]  As a result of the monthly and balloon payments provided for under the reorganization plans, SPCP will be repaid 118 percent of its claim.

Since the Residence and the Management company filed their Chapter 11 petitions, they have continued to make all of the required monthly payments to SPCP under their reorganization plans.  Nevertheless, SPCP proceeded with its state court action to enforce the Biggins's personal guaranties.  As a result, in February of 2009, each of the Biggins filed Chapter 13 petitions for bankruptcy.  Their petitions were later converted to Chapter 11 petitions.  At the time of their filing, the debt owed to SPCP totaled approximately $5.8 million.  Accordingly, in March of 2009, SPCP filed its Proof of Claim in each of the Biggins's/Debtors' Chapter 11 actions, asserting its unsecured claim in the amount of that debt.

In August of 2010, the bankruptcy court conducted a hearing at which it confirmed the individual Debtors' Chapter 11 reorganization plans over the objections of SPCP.  Debtors' plans permitted them to retain their ownership interests in the Residence.  Furthermore, the plans did not require Debtors to make monthly payments to SPCP because monthly payments instead were being made to SPCP by the Residence and the Management company under their reorganization plans, which provided for SPCP to be repaid 118 percent of the debt it was owed.  However, SPCP retained the right to enforce the guaranties signed by the individual Debtors, if the Residence and the Management company defaulted on the payments due under their

---

[1]SPCP appealed the bankruptcy court's confirmation of the Residence's and the Management company's plans of reorganization.  The district court affirmed.  *SPCP, Group, LLC v. Cypress Creek Assisted Living Residence, Inc.*, *et al.*, 434 B.R. 650 (M.D. Fla. 2010) (Lazzara, J.).

reorganization plans.

At the confirmation hearing, the bankruptcy court found that Debtors' reorganization plans complied with Sections 1129 (a) and (b) of the Bankruptcy Code. In particular, the court found that Debtors' reorganization plans were "fair and equitable," and thus satisfied the cramdown requirements of Section 1129(b). This meant that Debtors could properly enforce the plan provisions, which permitted Debtors to retain their interests in the Residence, over SPCP's objections. In doing so, the bankruptcy court found that the absolute priority rule of 11 U.S.C. Section 1129(b)(2)(B)(ii) no longer applies to individual Chapter 11 debtors after the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Additionally, the bankruptcy court found that, by separating SPCP into its own creditor class for the purpose of the cramdown of the reorganization plans, Debtors had not subjected SPCP to improper gerrymandering. Finally, the bankruptcy court found that Debtors had shown that their plans were feasible.

This appeal followed.

## II.    Standard of Review

Functioning as an appellate court, this Court independently reviews the factual and legal determinations of the bankruptcy court. *In re Jacobs*, 490 F.3d 913, 921 (11th Cir. 2007). The Court conducts a *de novo* review of the bankruptcy court's legal conclusions, and must accept the bankruptcy court's factual findings unless they are clearly erroneous. *In re Mitchell*, 633 F.3d 1319, 1326 (11th Cir. 2011); *In re Waldron*, 536 F.3d 1239, 1240 (11th Cir. 2008).

The bankruptcy court's decision regarding the applicability of the absolute priority rule is a conclusion of law, which is reviewed *de novo*. The remaining issues are factual

5

determinations, and are subject to the clear error standard of review.

**III.     Discussion**

SPCP raises the following issues on appeal: (1) whether the bankruptcy court erred in ruling that the absolute priority rule no longer applies to individual Chapter 11 debtors, and therefore Debtors' plans, which permit Debtors to retain their interest in the Residence while SPCP is being paid less than its full claim, were "fair and equitable" to SPCP;[2] (2) whether the bankruptcy court erred in ruling that separating SPCP into its own creditor class was not improper gerrymandering; and (3) whether the bankruptcy court erred in ruling that Debtors had shown, based on clear and convincing evidence, that their plans of reorganization were feasible.

**A.     Absolute Priority Rule**

Generally, a plan of reorganization can be confirmed in one of two ways. *In re Shat*, 424 B.R. 854, 857-58 (Bankr. D. Nev. 2010). If all sixteen paragraphs of Section 1129(a) are satisfied, a plan can be confirmed (with the consent of each class of creditor) under Section 1129(a). *Id.* If the debtor does not have the consent of each class of creditor, but satisfies the remainder of the paragraphs of Section 1129(a), as in this case, then the bankruptcy court may still confirm the plan, as long as the plan is, among other things, "fair and equitable." *Id.* "This second, nonconsensual, method of confirmation is colloquially referred to as 'cramdown.'" *Id.* at 858. Because SPCP did not consent to Debtors' proposed plans of reorganization, Debtors bore the burden of demonstrating that their plans were "fair and equitable" in order to have them confirmed. *Id.*

---

[2]The Court notes that this issue extends only to the four individual Debtors who have retained an ownership interest in the Residence.

A plan is "fair and equitable" as to unsecured creditors if it satisfies the absolute priority rule of 11 U.S.C. Section 1129(b)(2)(B)(ii). That rule provides that a plan is "fair and equitable" if:

> (B) With respect to a class of unsecured claims–
> . . .
> (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, *except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14)$^3$ of this section.*

11 U.S.C. § 1129(b)(2)(B) (emphasis added). In other words, a reorganization plan that does not pay an unsecured creditor in full is nevertheless "fair and equitable" (and can be confirmed over the unsecured creditor's objections), so long as an individual debtor does not retain property (except property included in the bankruptcy estate under section 1115).[4] *In re Gelin*, 437 B.R.

---

[3] This cross-reference to subsection (a)(14) has since been revised to cross-reference the current subsection (a)(15). *In re Shat*, 424 B.R. at 860, n.21. SPCP did not appeal the bankruptcy court's specific finding that Debtors' plans satisfied subsection (a)(15), and thus, that issue is not before the Court.

[4] Section 1115 provides the following definition of "property of the estate:"

> (a) In a case in which the debtor is an individual, property of the estate includes, in addition to the property specified in section 541–
> > (1) all property of the kind specified in section 541 that the debtor acquires after the commencement of the case, but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first; and
> > (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first.
> (b) Except as provided in section 1104 or a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.

11 U.S.C. § 1115.

435, 439-40 (Bankr. M.D. Fla. 2010). The italicized portion of the statute was added in 2005 as part of the BAPCPA amendments.

Courts interpreting this new language disagree about the meaning of the phrase "property included in the estate under section 1115," and thus also disagree as to the extent to which the absolute priority rule applies to individual debtors after the amendment. Compare *In re Gbadebo,* 421 B.R. 222, 230 (Bankr. N.D. Cal. 2010) (holding that the absolute priority rule applies) with *In re Shat*, 424 B.R. 854, 868 (Bankr. D. Nev. 2010) (holding that the absolute priority rule does not apply). A broad interpretation of the amendment to the absolute priority rule would allow an individual debtor's reorganization plan to be confirmed, while the debtor retains *all property and wages acquired both pre-petition and post-petition*, even if that plan does not pay an unsecured creditor in full, thus abrogating the absolute priority rule. *See In re Gelin*, 437 B.R. at 440. A narrow interpretation would allow the individual debtor to keep *only property and wages acquired post-petition. See id.*

Here, the bankruptcy court followed *In re Shat*, 424 B.R. 854 (Bankr. D. Nev. 2010), and adopted the broad interpretation of the statute. After reviewing the legislative history of the BAPCPA amendments, the *Shat* court found that the statute permits an individual debtor to retain all property of the estate, including property and wages acquired both pre-petition and post-petition, thereby finding that the absolute priority rule no longer applies to individual Chapter 11 debtors after BAPCPA. Here, the bankruptcy court followed the *Shat* holding, finding that "under BAPCPA, Congress has done away with the absolute priority rule in the

context of individual cases, as discussed . . . in . . . the *Shat* case."[5]

On appeal, SPCP contends that the bankruptcy court erred in adopting the broad view of the statute, and contends that the court instead should have adopted the narrow view, as another bankruptcy court in the Middle District of Florida did in *In re Gelin*, 437 B.R. 435 (Bankr. M.D. Fla. 2010). The *Gelin* court determined that the phrases "in addition to" in Section 1115 and "included in" in Section 1129 (b)(2)(B)(ii) were ambiguous, and thus required the court to interpret Congressional intent in drafting those sections. 437 B.R. at 441. The *Gelin* court then conceded that the legislative history was *itself* ambiguous, so it attempted to interpret Congressional intent "as best it [could]" by giving the statutes what the court believed to be "their most sensible meaning in the context of the Bankruptcy Code." *Id.* at 441. The *Gelin* court believed that to read Sections 1129(b)(2)(B)(ii) and 1115 to exempt individual Chapter 11 debtors from the absolute priority rule was "complicated" and "forced." *Id.* at 442. The *Gelin* court noted that "[i]f Congress truly meant to exempt an individual debtor's entire estate, it likely would have referred to *both* §§ 541 and 1115." *Id.* The *Gelin* court instead concluded that "[t]he more likely interpretation" is that "property included in the estate under section 1115" refers only to property acquired post-petition. *Id.* Thus, the *Gelin* court ruled that individual debtors cannot cram down a plan that contemplates retention of pre-petition assets, unless they obtain the consent of their unsecured creditors. *Id.* at 442-43.

Upon review of the record on appeal, the parties' briefs, and the relevant statutes and

---

[5]After considering the absolute priority rule, the bankruptcy court went on to conclude that Debtors could retain property, so long as Debtors had satisfied the requirements of subsection (a)(15). The bankruptcy court ruled that Debtors had done so, and SPCP has not appealed that finding.

caselaw, the Court concludes that the broad view of the phrase "property included in the estate under section 1115" is correct, and thus the bankruptcy court's ruling must be affirmed. The Court reaches this conclusion not by analyzing the legislative history of the relevant statutes, as the *Shat* and *Gelin* courts did, but by focusing on the statutes' plain language. Indeed, "[t]he starting point for all statutory interpretation is the language of the statute itself." *United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999). The Court "assume[s] that Congress used the words in a statute as they are commonly and ordinarily understood, and . . . read[s] the statute to give full effect to each of its provisions." *Id.* Furthermore, "where a statute is unambiguous, the court need not, and ought not, consider legislative history." *Reeves v. Astrue*, 526 F.3d 732, 734 (11th Cir. 2008) (citations and quotations omitted). Because the statute's language is clear, the Court declines to guess what Congress meant when it chose that language, and instead, reads the words as they are written.

On its face, Section 1129(b)(2)(B)(ii) permits a bankruptcy court to confirm an individual Chapter 11 debtor's reorganization plan (which does not pay an unsecured creditor in full) over the unsecured creditor class's objection, even when the debtor retains "property included in the estate under § 1115." Section 1115 says that "property of the estate includes, in addition to the property specified in section 541– (1) all property of the kind specified in section 541 that the debtor acquires after the commencement of the case," as well as "(2) earnings from services performed by the debtor after the commencement of the case." The plain reading of this statute is that "property of the estate," for purposes of Section 1115, includes property acquired and earnings earned after the debtor files his or her Chapter 11 petition, in addition to property specified in section 541. Property specified in section 541 includes property that the debtor

holds an interest in at the time of the commencement of the bankruptcy case. 11 U.S.C. § 541(a)(1).

Reading these statutes together, "property of the estate" for purposes of Section 1115 includes property and earnings acquired both before and after the commencement of the bankruptcy case. The meaning of these statutes is clear, and therefore, the Court's inquiry stops here. *Reeves*, 526 F.3d at 734 (ruling that "[s]tatutory interpretation begins and ends with the text of the statute so long as the text's meaning is clear").[6] According to the plain meaning of the statutes, Debtors' plans could be confirmed over SPCP's objections because the absolute priority rule no longer applies to prevent individual Chapter 11 debtors from retaining pre- or post-petition property over an unsecured creditor's objection.

### B. Gerrymandering

Section 1122 of the Bankruptcy Code provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122 (a). Furthermore, "[a] plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience." *Id.* at (b).

---

[6]The Court declines to follow *In re Gelin* for the additional reason that it is factually distinguishable from this case. The debtors in *Gelin* proposed to pay their unsecured creditors less than one percent of their claims, while SPCP will be repaid 118 percent of its claim under the Residence's and the Management company's reorganization plans. *See Gelin*, 437 B.R. at 438. Furthermore, the *Gelin* court expressed "significant doubt" over the feasibility of the debtors' plans, whereas the bankruptcy court here found that the plans of the Residence and the Management company–the entities which will make payments to SPCP–were feasible, a ruling which was upheld on appeal. *Gelin*, 437 B.R. at 438 n.9; *SPCP, Group, LLC,* 434 B.R. at 656-57.

On appeal, SPCP argues that the bankruptcy court erred in finding that it was not improper gerrymandering to segregate SPCP into its own class of unsecured creditors. SPCP contends that there is no distinction between it and the other unsecured creditors that justifies segregating it into its own class, and that Debtors failed to demonstrate why it would be "reasonable and necessary for administrative convenience" to do so.

The Court disagrees. "The main purpose of classification [of creditors] is to recognize a difference in rights of creditors which calls for a difference in treatment." *In re Porcelli*, 319 B.R. 8, 10 (Bankr. M.D. Fla. 2004) (citations and quotations omitted). "The separate classification of similarly situated claims violates section 1122 and is deemed to be improper separation of claims to manipulate voting." *Id.* "The proponent of the plan must demonstrate a justification for its classification scheme and that the classification is not motivated by the purpose of gerrymandering an affirmative vote of an impaired class." *Id.*

Despite SPCP's argument to the contrary, Debtors presented sufficient evidence to justify SPCP's separate classification. As the bankruptcy court noted, SPCP's claim is "hugely different" from the claims of other unsecured creditors because SPCP's claim is "100 percent collateralized in the corporate case," while none of the other unsecured creditors had collateral for their loans. Furthermore, SPCP is different from other unsecured creditors because it has continued to receive regular monthly payments from the Residence and the Management company under their reorganization plans, while the other unsecured creditors have received nothing. Finally, SPCP ultimately will receive, over the course of the Residence's and the Management company's plans, 118 percent of its allowed unsecured claim, while the other unsecured creditors will receive at most 100 percent of their claims.

The bankruptcy court found, and the Court agrees, that "to compare [SPCP] in this case to the unsecured creditors would be to ignore the facts in this case [because] [t]hey're entirely different situations and they have to be classified separately." The bankruptcy court concluded that the plan did not discriminate against SPCP, and noted, "in fact, if anything, it may discriminate in favor of SPCP because they're getting 118 percent and the guarantors are staying there and will be there to back up this credit facility." The Court agrees with the bankruptcy court that Debtors demonstrated sufficient justification for the segregation of SPCP into its own class, and that such segregation was not intended to manipulate voting.

### C. Feasibility of Debtors' Plans

Section 1129(a)(11) requires a debtor to show that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor," and thus the plan is feasible. The bankruptcy court found that Debtors' plans satisfied this provision because SPCP would be paid in the Residence's and the Management company's reorganization plans, which the bankruptcy court previously found were feasible. The bankruptcy court furthermore found that Debtors' plans were "not likely to be followed by liquidation or the need for further financial reorganization for the same reasons that [the bankruptcy court] found . . . to be true in the . . . corporate cases."

SPCP argues that the bankruptcy court erred in finding that Debtors' reorganization plans were feasible because the finding was not supported by clear and convincing evidence. It furthermore contends that it was improper for the bankruptcy court to rely on the plan payments of the third-party corporate debtors to find that the individual Debtors' plans were feasible.

The Court disagrees. SPCP has failed to cite–and the Court has not found on its own–any

statute or caselaw that prevents the confirmation of a Chapter 11 reorganization plan, when that plan provides for a third party to repay creditors. To the contrary, as the bankruptcy court noted, such third-party funding is commonplace:

> And under this interpretation you'd have–a $5 million debt would have to be paid 50 different times by 50 different Debtors. I mean, it's just–that's just not the way it works. The parent pays it and the guarantees stay in effect and the case gets confirmed. Do it all the time. That's the way these cases are confirmed.

As SPCP acknowledges in its brief, it is only entitled to one satisfaction of the debt. It will receive 118 percent of that satisfaction from the corporate debtors; and, the individual Debtors' guarantees remain in place, if the corporate debtors default on their plan payments.

Additionally, the Court finds that the bankruptcy court did not err in finding that Debtors' reorganization plans were feasible. The bankruptcy court noted that SPCP would be repaid in the corporate debtors' plans, which it had previously found to be feasible–a ruling that was upheld on appeal by the district court. In assessing the feasibility of a reorganization plan, the bankruptcy court must consider the "earning power of the business, its capital structure, the economic conditions of the business, the continuation of present management, and the efficiency of management in control of the business after confirmation." *In re D&G Invs. of W. Fla., Inc.*, 342 B.R. 882, 886 (Bankr. M.D. Fla. 2006). In the corporate debtors' cases, the bankruptcy court properly considered the facts that the corporations had continued to make regular payments to SPCP, that they had increased the census of the assisted living facility, that they had increased revenue, that they had accumulated approximately $180,000.00 in cash, and that they had made changes in management, in order to find the corporate debtors' reorganization plans were feasible. The Court does not see any reason to disturb this ruling, and will not permit the re-

litigation of that issue.

In conclusion, given that the bankruptcy court found that the corporate debtors' plans were feasible, and thus, that SPCP would be paid in full by the corporate debtors, the bankruptcy court correctly concluded that the individual Debtors' plans, which continued their guaranties of the debt, were feasible.

## IV. Conclusion

In conclusion, the Court finds that the bankruptcy court's decision to confirm Debtors' plans of reorganization was proper and must be upheld. Accordingly, it is **ORDERED AND ADJUDGED** that:

(1) The decision of the Bankruptcy Court is **AFFIRMED**;

(2) The request for oral argument is denied; and

(3) The Clerk is directed to enter judgment in favor of Appellees James John Biggins, Kristin R. Biggins, Kimberly Rae Norton, Michael Biggins, Elizabeth Biggins, James E. Biggins, and Shirley R. Biggins, and against Appellant SPCP Group, LLC, and to close the case.

**DONE AND ORDERED** at Tampa, Florida, this 21st day of September, 2011.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record
The Honorable Michael G. Williamson, U.S. Bankruptcy Judge